UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN SPRINGS, CDCR #AS-6800,<br><br>                        Plaintiff,<br><br>vs.<br><br>SECRETARY DIAZ, WARDEN MONTGOMERY, CORRECTIONAL OFFICERS RABER, REYES, FERRAT, POLLARD, ESPOSITA and SCOTT,<br><br>                        Defendants. | Case No. 21cv862-MMA (AGS)<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)** |

Plaintiff Jordan Springs, incarcerated at Calipatria State Prison ("Calipatria") in Calipatria, California, is proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. *See* Doc. No. 1. Plaintiff alleges that the Warden of Calipatria, the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), and six Calipatria Correctional Officers are responsible for violations of his First Amendment right to petition the government for redress of grievances, his Fifth Amendment right to due process and his Fourteenth Amendment right to equal protection, in connection to the processing of inmate grievances Plaintiff filed following an injury. *See id.* at 2-10.

Plaintiff did not prepay the civil filing fee required by 28 U.S.C. Section 1914(a) at the time of filing and has instead filed a Motion to Proceed in Forma Pauperis ("IFP") pursuant to 28 U.S.C. Section 1915(a).  *See* Doc. No. 2.

## I.  Motion to Proceed in Forma Pauperis

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a failure to prepay the entire fee only if leave to proceed in forma pauperis ("IFP") is granted pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).  Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. § 1915(b)(1) & (4).  The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid.  *See* 28 U.S.C. § 1915(b)(2).  Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether their action is ultimately dismissed.  *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP motion, Plaintiff has submitted a copy of his CDCR Inmate

---

[1] In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $52.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

Statement Report and Prison Certificate attested to by a CDCR trust account official. (ECF No. 2 at 6.)  The document shows he had an average monthly balance of $140.68 and average monthly deposits of $251.67 for the 6-months preceding the filing of this action, and an available balance of $101.80 at the time of filing.  *Id*.

The Court **GRANTS** Plaintiff's Motion to Proceed IFP, exacts an initial filing fee of $50.33, which is 20% of $251.67, and directs the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), or his designee, to collect and forward to the Clerk of Court the initial filing fee and thereafter collect the remaining $299.67 balance of the filing fee required by 28 U.S.C. § 1914 and forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II.     Screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

### A.     Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

 "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).")

1  Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true,
2  to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662,
3  678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Detailed
4  factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause
5  of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at
6  678.  "Determining whether a complaint states a plausible claim for relief [is] . . . a
7  context-specific task that requires the reviewing court to draw on its judicial experience
8  and common sense." *Id.*  The "mere possibility of misconduct" or "unadorned, the
9  defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility
10 standard.  *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).
11     Title 42 U.S.C. § 1983 "creates a private right of action against individuals who,
12 acting under color of state law, violate federal constitutional or statutory rights."
13 *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a
14 source of substantive rights, but merely provides a method for vindicating federal rights
15 elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal
16 quotation marks and citations omitted).  "To establish § 1983 liability, a plaintiff must
17 show both (1) deprivation of a right secured by the Constitution and laws of the United
18 States, and (2) that the deprivation was committed by a person acting under color of state
19 law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).
20     **B.     Plaintiff's Allegations**
21     Plaintiff alleges that about 7:10 p.m. on April 30, 2020, while housed at Calipatria,
22 his "cell door fully opened while he was praying." Doc. No. 1 at 4.  He stood at the
23 entrance to his cell and asked Defendant Correctional Officer Raber, the control booth
24 officer, why he had opened the cell door.  *Id*.  Defendant Raber "shouted out the booth
25 window the Ramadan evening meal had arrived." *Id*.  Plaintiff asked Defendant Raber
26 for a minute to get dressed because he had been praying. *Id*. at 4-5.  About 30 seconds
27 later the cell door began to open and close for 20 seconds. *Id*. at 5.  Plaintiff approached
28 the door with his hands up in a gesture to Defendant Raber to "give Plaintiff a few

seconds." *Id*. Plaintiff "went to grab his ID card" while the cell door was halfway open, and then stood in the doorway holding his ID card aloft and adjusting his clothes. *Id*. As he stood in the opening, the door closed and hit him on his right side, throwing him off balance. The cell door then hit him in the head, and he stumbled to the floor in front of his cell. As he attempted to get up, Defendant Raber shouted for him to hurry. When he regained his balance, blood was running down his face and his "head started to pound in pain." *Id*.

Plaintiff immediately reported the incident to Defendants Correctional Officers Reyes and Ferrat and told them he needed medical attention. As blood poured down his face, an inmate porter gave Plaintiff a towel to try to stop the bleeding. Defendant Reyes told Plaintiff "he had to walk to medical." *Id*. at 6. Plaintiff told Defendants Reyes and Ferrat he was dizzy and asked if medical could come to him. Defendant Reyes told Plaintiff "either you walk to medical or grab your Ramadan meal and go back to your cell." *Id*. Plaintiff then walked to medical about 7:15 p.m. and was treated for a head injury and a cut to his forehead.

On May 12, 2020, Plaintiff filed a CDCR-602 Inmate Appeal about the incident to Defendant Correctional Officer Pollard, Calipatria's Appeals Coordinator, for first level review, "which was never filed or heard." *Id*. After waiting about 30 days for a response that never came, Plaintiff sent a CDCR-22 form to the office of the Appeals Coordinator on April 31, 2020, requesting the log number and status of his original CDCR-602 Inmate Appeal. On June 2, 2020, Plaintiff submitted another, identical CDCR-602 Inmate Appeal to Defendant Pollard. Plaintiff never received a response to any of those filings so he bypassed the first and second levels of inmate grievance review and submitted a CDCR-602 Inmate Appeal and Staff Complaint directly to the third level review to the Chief of Inmate Appeals Branch of the CDCR in Sacramento, California, which he contends was necessary "because Plaintiff is entitled to his First Amendment, the right to petition the government for redress of grievances and to his Fifth Amendment, the right to due process which Calipatria State Prison continues to violate." *Id*. at 6-7. He states

that he also filed a Health Care Service Grievance on May 3, 2020, relating to his injury.

Plaintiff claims that due to the gross negligence of Defendant Raber he now suffers migraine headaches three or four times a week which last three or four hours at a time which he did not have before being hit in the head by the cell door, and that he has been on migraine medicine since the incident. He claims the migraines will prevent him from working in construction labor after his release from prison as planned. He claims Defendants Secretary of the CDCR Diaz, Calipatria Warden Montgomery, and Calipatria Correctional Officers Esposita, Pollard and Scott "have also caused mental pain and suffering to the Plaintiff by aiding in the cover up of this incident when they discarded Plaintiff's original grievance." *Id*. at 8.

Plaintiff claims violations of the First Amendment right to petition the government for the redress of grievances, the Fifth Amendment right to due process, and his Fourteenth Amendment right to equal protection of the laws. He seeks declaratory and injunctive relief, compensatory and punitive damages, a jury trial and appointment of counsel.

### C.  Analysis

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

#### 1.  First and Fifth Amendment Claims

Plaintiff alleges violations of the First Amendment right to petition the government for the redress of grievances and the Fifth Amendment right to due process in connection to the failure of Calipatria personnel and the Secretary of the CDCR to process the inmate appeals and staff complaints he submitted in connection to his injury. There is no independent constitutional right to a prison administrative appeal or grievance system. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate

constitutional entitlement to a specific prison grievance procedure."), citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a [state prison] grievance procedure."); *see also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (noting that although prisoners have a First Amendment right to petition the government for redress of grievances and access to the courts, those rights are "not compromised by the prison's refusal to entertain his grievance."). Thus, with respect to the allegations against the Defendants based on their role in the processing of Plaintiff's CDCR-602 Inmate Appeals, the Complaint fails to state a claim because there is no constitutional requirement regarding how a grievance system is operated. *Ramirez*, 334 F.3d at 860; *Mann*, 855 F.2d at 640; *see also Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (noting that identification of a constitutionally protected interest required to state a procedural due process claim), citing *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Accordingly, the allegations in the Complaint claiming violations of Plaintiff's First Amendment right to petition for the redress of grievances and his Fifth Amendment due process rights with respect to any Defendant's role in processing or failing to process inmate appeals fails to state a § 1983 claim and these claims are subject to dismissal. *See Iqbal,* 556 U.S. at 678 (noting that a complaint is subject to dismissal for failure to state a claim if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"), quoting *Twombly*, 550 U.S. at 570.

**2. Fourteenth Amendment Equal Protection Claims**

The Complaint alleges "the defendant(s) violated the plaintiff's Fourteenth Amendment, the right to equal protection of the laws." Doc. No. 1 at 10. Plaintiff indicates that he relies on and incorporates the factual allegations of his Complaint regarding his First and Fifth Amendment claims, but identifies no factual allegations directly related to an equal protection claim.

The Court has an "obligation . . . where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of

any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010), quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). "However, a liberal interpretation of a civil rights complaint may not supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann v. Cal. Dep't of Corrs. and Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Plaintiff may state an equal protection claim by alleging facts from which a plausible inference can be drawn that the Defendants intentionally discriminated against him based on his membership in a protected class. *Comm. Concerning Community Improvement v. City of Modesto*, 583 F.3d 690, 702-03 (9th Cir. 2009); *Serrano v Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *see also Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (suspect classes include race, religion, or alienage). Plaintiff may also state a "class of one" equal protection claim by alleging that similarly situated prisoners were intentionally treated differently and that he was singled out for disparate treatment without a rational relationship to a legitimate purpose. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-02 (2008).

To the extent Plaintiff is attempting to present an equal protection claim based on his membership in a protected claim based on his religious beliefs, in order to state an equal protection claim he must allege facts plausibly showing a Defendant acted with an intent or purpose to discriminate against him based on his religious beliefs. *City of Modesto*, 583 F.3d at 702-03; *Serrano*, 345 F.3d at 1082. Even under a liberal construction of the Complaint, Plaintiff's allegations that was he interrupted while praying in order to receive a Ramadan meal, at which time Defendant Raber negligently operated the cell door and caused Plaintiff to be injured, that Defendants Reyes and Ferrat required him to walk to obtain medical assistance rather than summon assistance, and that the remaining Defendants caused mental pain and suffering by aiding in a cover-

up of the incident by disregarding Plaintiff's grievances, there are no allegations in the Complaint which, if true, plausibly suggest that the actions of any Defendant were taken based on intentional discrimination against Plaintiff on account of his religion. Accordingly, to the extent Plaintiff intended to predicate his equal protection claim on his religion, his conclusory allegation of a denial of equal protection is insufficient to state a § 1983 claim. *See Iqbal*, 556 U.S. at 678.

To the extent Plaintiff is not relying on religious discrimination, he may still state an equal protection claim based on a "class of one." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (discussing reliance on "class of one" equal protection theory when plaintiff is not in a protected class). To state a claim under this theory, Plaintiff must allege he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. There are no such allegations in the Complaint, and Plaintiff has not stated a claim for denial of equal protection under this theory.

### 3. Eighth Amendment Claims

Finally, although not expressly identified as such in the Complaint, to the extent Plaintiff intended to present a claim based on his injuries or for the denial or delay in medical care arising from the gross negligence of Defendant Raber in operating the cell door and against Defendants Reyes and Ferrat in failing to summon medical help, he has not stated a § 1983 claim. Neither negligence nor gross negligence is actionable under § 1983 in the prison context. *Farmer v. Brennan*, 511 U.S. 825, 835-36 & n.4 (1994); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (gross negligence insufficient to state claim for denial of medical needs to prisoner). An accident does not constitute deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

Rather, "[i]n order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014), quoting *Estelle*, 429 U.S. at 104. "Deliberate indifference 'may appear when prison officials deny, delay or

intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id*., quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. Second, Plaintiff must allege the prison official he seeks to hold liable had a "'sufficiently culpable state of mind' . . . [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety;" he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Although Plaintiff alleges that he requested to have medical attention brought to him after he was hit by the cell door because he was dizzy, but was required to "walk to medical," there are no allegations in the Complaint which plausibly suggest any Defendant knew of and deliberately disregarded Plaintiff's serious medical needs in requiring him to walk to the medical station to obtain care. Thus, the Complaint fails to allege an Eighth Amendment deliberate indifference claim against any Defendant.

In addition, the Complaint alleges that Defendants Secretary of the CDCR Diaz, Calipatria Warden Montgomery, and Calipatria Correctional Officers Esposita, Pollard and Scott "have also caused mental pain and suffering to the Plaintiff by aiding in the cover up of this incident when they discarded Plaintiff's original grievance." Doc. No. 1 at 8. A state official can only be liable in a § 1983 action for his or her own misconduct. *Iqbal*, 556 U.S. at 677. A supervisor or superior cannot be liable under § 1983 solely because he or she is responsible for the actions or omissions of another. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."). "A plaintiff must allege facts, not simply conclusions, that show that [each defendant] was personally involved in

the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim.")  The Complaint does not satisfy these standards, as it fails to contain individualized allegations against these Defendants regarding their involvement in the alleged "cover up" of the failure to address Plaintiff's inmate grievances, and in any case, as set forth above, the allegations against any Defendant regarding the way the inmate grievances were handled do not state a § 1983 claim for relief.

Accordingly, the Court *sua sponte* dismisses all claims in the Complaint against all Defendants based on a failure to state a claim.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### D.    Leave to Amend

Considering Plaintiff's pro se status, the Court grants him leave to amend his Complaint to attempt to sufficiently allege a § 1983 claim if he can.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## III.   Request for Appointment of Counsel

Plaintiff requests appointment of counsel.  Doc. No. 1 at 12.  "A document filed pro se is 'to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle*, 429 U.S. at 106).  There is no constitutional right to counsel in a civil case, and the decision to appoint counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exceptional circumstances." *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting that only "exceptional circumstances" support such a discretionary appointment).  Such

exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and an inability of the pro se litigant to articulate his claims considering their legal complexity. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

Plaintiff's Complaint demonstrates that while not formally trained in law, he is fully capable of legibly articulating the facts and circumstances relevant to his claims, which are not exceptionally legally complex. In addition, for the reasons discussed above, Plaintiff has yet to show he is likely to succeed on the merits of the claims. Accordingly, the Court denies Plaintiff's request for appointment of counsel without prejudice to Plaintiff to renew the request at a later stage of these proceedings.

## IV.   Conclusion and Orders

Good cause appearing, the Court:

1.   **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. Section 1915(a).

2.   **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the initial filing fee of $50.33 and thereafter collect the remaining $299.67 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3.   **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4.   **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1) and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's

Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

DATE: May 28, 2021

                                                                              *[signature]*

HON. MICHAEL M. ANELLO
United States District Judge