1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10         SOUTHERN DISTRICT OF CALIFORNIA
11

12  JORDAN SPRINGS,                          Case No.:  21-cv-862-MMA (AGS)
    CDCR #AS-6800,
13                                           **ORDER DENYING DEFENDANT'S**
                              Plaintiff,     **MOTION FOR SUMMARY**
14                                           **JUDGMENT**
    v.
15                                           [Doc. No. 21]
    CORRECTIONAL OFFICER RABER,
16
                              Defendant.
17

18

19          Plaintiff Jordan Springs ("Plaintiff"), a California inmate proceeding *pro se*, brings

20  this civil rights action pursuant to 42 U.S.C. § 1983, alleging an Eighth Amendment

21  excessive force claim against Defendant Raber ("Defendant"), a correctional officer at

22  Calipatria State Prison ("CAL"), where Plaintiff is currently housed.  *See* Doc. No. 1.

23  Defendant moves for summary judgment on the basis that Plaintiff failed to exhaust his

24  administrative remedies.  Doc. No. 21.  Plaintiff filed a response in opposition, to which

25  Defendant replied.  Doc. Nos. 24, 25.  The Court took the matter under submission

26  without oral argument pursuant to Civil Local Rule 7.1.d.1 and Federal Rule of Civil

27  Procedure 78(b).  Doc. No. 23.  For the reasons set forth below, the Court **DENIES**

28  Defendant's motion.

1

## BACKGROUND[1]

2    Plaintiff is a California inmate currently housed at CAL in Calipatria, California.

3  Doc. No. 21 at 10–15 ("Defendant's Separate Statement" or "DSS") No. 1.  Defendant is

4  a correctional officer employed by the California Department of Corrections and

5  Rehabilitation ("CDCR") at CAL.  DSS No. 2.  On August 30, 2021, Plaintiff filed a

6  Second Amended Complaint, alleging Defendant used excessive force against him in

7  violation of his Eighth Amendment rights.  Doc. No. 7 ("SAC").  According to the SAC,

8  on April 30, 2020, Defendant closed Plaintiff's cell door, without warning, hitting

9  Plaintiff in the head and causing him to stumble to the floor.  SAC at 3.  Later that

10  evening, Plaintiff was treated for a bleeding laceration and hematoma on the forehead.

11  SAC at 4.  Defendant categorically denies these allegations.  *See* Doc. No. 11.

12    As will be discussed below, the parties appear to dispute what occurred in the two

13  months after the incident.  Nonetheless, on July 5, 2020, Plaintiff submitted a form 602

14  grievance, reporting this incident, logged as grievance no. 44709.  DSS No. 9; Doc.

15  No. 21 at 37–40 ("Def. Exhibit C"); Doc. No. 24-1 at 1–9 ("Pl. Exhibit A") at 4.  CAL

16  denied the grievance as untimely on October 5, 2020.  DSS No.  10; Doc. No. 21 at 41–

17  42 ("Def. Exhibit D"); Doc. No. 24-1 at 14–19 ("Pl. Exhibit C") at 16.  On October 11,

18  2020, Plaintiff appealed to the CDCR's Office of Appeals.  DSS No. 11; Doc. No. 21 at

19  43–45 ("Def. Exhibit E"); Pl. Exhibit C at 17.  The Office of Appeals rejected Plaintiff's

20  appeal on December 16, 2020.  DSS No. 12; Doc. No. 21 at 46–47 ("Def. Exhibit F");

21  Pl. Exhibit C at 19.

22  ## LEGAL STANDARD

23    "A party may move for summary judgment, identifying each claim or defense—or

24  the part of each claim or defense—on which summary judgment is sought.  The court

25

26

27  [1] These material facts are taken from Defendant's Separate Statement of Undisputed Facts, *see* Doc.
No. 21 at 11–15, together with the parties' supporting declarations and exhibits.  Particular material facts
that are not recited in this section may be discussed *infra*.  Facts that are immaterial for purposes of
resolving the current motion are not included in this recitation.

28

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the "outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See id.*

If the moving party meets its burden, the nonmoving party must go beyond the pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial. *See Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A "scintilla of evidence" in support of the nonmoving party's position is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. Moreover, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

Federal Rule of Civil Procedure 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd*, 475 U.S. at 586–87. Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the

existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322–23.

The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved from strict compliance, they still must "identify or submit some competent evidence" to support their claims. *Soto*, 882 F.3d at 872.

## DISCUSSION

Defendant moves for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies. "The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 635, (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). Therefore, regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as that process remains available to him. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not

further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 578 U.S. at 648; *see also Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (explaining that PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable"). Grievance procedures are available if they are "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 633 (quoting *Booth*, 532 U.S. at 738); *see also Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) ("To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'") (quoting *Albino v. Baca*, 747 F.3d 1162, 1171(9th Cir. 2014)).

In *Ross*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 578 U.S. at 633. These circumstances arise when: (1) the "administrative procedure . . . operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* (citations omitted).

Applying these principles, the Ninth Circuit has specifically found that "[w]hen prison officials fail to respond to a prisoner's grievance within a reasonable time, the prisoner is deemed to have exhausted available administrative remedies within the meaning of the PLRA." *See Andres v. Marshall*, 854 F.3d 1103, 1105 (9th Cir. 2017) (per curiam) (finding prison's six-month failure to respond to an inmate grievance rendered prisoner's administrative remedies unavailable), *accord Dole v. Chandler*, 438 F.3d 804, 809, 811 (7th Cir. 2006) (officials' failure to respond to a "timely complaint that was never received" rendered prisoner's administrative remedies unavailable). The

Ninth Circuit has further found administrative remedies "plainly unavailable" where prison officials "screen out an inmate's appeals for improper reasons," *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010), and "effectively unavailable" where they provide the inmate mistaken instructions as to the means of correcting a claimed deficiency, but upon re-submission, reject it as untimely after compliance proved impossible.  *See Nunez*, 591 F.3d at 1226.  Administrative remedies may also prove unavailable if the prisoner shows an "objectively reasonable" basis for his belief that "officials would retaliate against him if he filed a grievance."  *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015).

Because the failure to exhaust is an affirmative defense, Defendant bears the burden of raising it and proving its absence.  *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1169 (noting that Defendants must "present probative evidence—in the words of *Jones*, to 'plead and prove'–that the prisoner has failed to exhaust available administrative remedies under § 1997e(a)").  At the summary judgment stage, Defendant must produce evidence proving Plaintiff's failure to exhaust; he is entitled to summary judgment only if the undisputed evidence, viewed in the light most favorable to Plaintiff, shows he failed to fully exhaust his administrative remedies.  *Albino*, 747 F.3d at 1166.

**A.    CDCR's Administrative Remedies**

The CDCR has established an "administrative remedy" for prisoners to pursue before filing suit under § 1983.  *See Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).  Since January 28, 2011, and during the time of the incident alleged in Plaintiff's SAC, Title 15 of the California Code of Regulations, sections 3084 through 3084.9 governed the procedure for an inmate's administrative remedies.  However, the regulations that set forth the administrative remedies process for California prisoners underwent a substantial restructuring in 2020.  In particular, on March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended

provisions at sections 3480 through 3487.[2]  *See* Cal. Code Regs. tit. 15, §§ 3480–3487 (eff. June 1, 2020).

Among other things, the amendments changed the structure and levels for administrative remedies review.  Under the Repealed Regulations, California inmates were required to progress through three levels of review: (1) submission of a CDCR Form 602 to the appeals coordinator at the institution; (2) internal appeal of a denial or otherwise unsatisfactory resolution; and (3) external appeal directly to the CDCR's Inmate Appeals Branch.  *See* Cal. Code Regs. tit. 15, § 3084.7(b)–(d) (repealed 2020). The Amended Regulations have done away with the intermediate, internal appeal. Therefore, as of June 1, 2020, California inmates must submit a CDCR Form 602 to the institution's grievance office and then need only appeal externally to the CDCR's division that handles appeals—formerly, the Inmate Appeals Branch, now named the Office of Appeals.  *See* Cal. Code Regs. tit. 15, §§ 3482, 3484; Moseley Decl. ¶ 1.  As such, the Amended Regulations has only two levels of review.  *Id.*; *see also Bahena v. Rodriguez*, No. 1:20-cv-01685-AWI-SAB (PC), 2022 U.S. Dist. LEXIS 25592, at *8 (E.D. Cal. Feb. 11, 2022).

This case presents a unique situation: at the time of the underlying incident, April 30, 2020, the Repealed Regulations remained effective, but by the time Plaintiff filed his July 5, 2020 grievance and October 11, 2020 appeal, the Amended Regulations were in effect.  The question, then, is which administrative remedies procedure applies?

**B.   Availability of Administrative Remedies**

While not dispositive, the Court must begin by addressing Defendant's argument that Plaintiff was subject to three levels of review under the Repealed Regulations and that he did not duly exhaust because his "appeal history establishes that he has not

---

[2] The Court refers to California Code of Regulations Title 15, sections 3084 through 3084.9 as the "Repealed Regulations" and sections 3480 through 3487 as the "Amended Regulations."

exhausted any appeals at the third level of review."[3]  Doc. No. 21 at 8.  The contention that Plaintiff was subject to the Repealed Regulations has no merit in light of the undisputed evidence.

First, Defendant has put forth conflicting evidence as to which administrative remedies procedure was generally available to Plaintiff.[4]  For example, P. Lopez, the Appeals Coordinator at CAL, stated that the question turns on the date of the incident. *See* Doc. No. 21 at 27–31 ("Lopez Decl.") ¶ 6.  She declared: "For any grievance pertaining to an ***event that occurred prior to June 1, 2020***[,] and as set forth in Title 15, CDCR's non-healthcare inmate appeals process has three levels of appeal . . . ."  *Id.* (emphasis added).  It is on this basis, presumably, that Defendant makes his argument. However, Howard Moseley, the Associate Director of the Office of Appeals, narrated a different interpretation of the amendments' application:

> I am familiar with the sections of Title 15 of the California Code of Regulations that governed during the timeframe relevant to Plaintiff's appeal. If ***filing a grievance before June 1, 2020***, an offender was required to follow the procedures set forth in California Code of Regulations (CCR), title 15, sections 3084-3085 (repealed effective June 1, 2020). If filing a grievance on or after June 1, 2020, an offender is required to follow the procedures set forth in CCR, title 15, sections 3480-3487 (effective June 1, 2020).

Doc. No. 21 at 16–19 ("Moseley Decl.") ¶ 6 (emphasis added).

---

[3] The assertion appears plain notwithstanding Defendant's inconsistent arguments on the point. *Compare* Doc. No. 21 at 8 ("Springs' inmate appeal history establishes that he has not exhausted any appeals at the third level of review."), *with id.* ("Springs' grievance was properly rejected at the second and third levels of review.").

[4] The Court takes judicial notice of the fact that the regulations underwent further revision in December 2021.  *See* "Adopted Regulations for Inmate and Parolee Grievance and Appeal Process," CAL. DEPT. CORR. AND REHAB., *available at* https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2022/01/2021-1207-06C_Approval_ADA.pdf (last visited Mar. 28, 2022). Because all events involved in this case occurred prior to January 5, 2022 (the revisions' effective date), the Court does not consider the further revisions.

1    The discrepancy begs an important question: if the CDCR's appeals personnel

2  cannot articulate a clear procedure for the administrative remedies available to Plaintiff

3  during the events that are the subject of this litigation, how can Plaintiff be expected to

4  follow such procedure and exhaust his administrative remedies?

5    Regardless, Defendant has offered inconsistent evidence and thus fails to meet his

6  "burden of demonstrating a system of available administrative remedies at the initial step

7  of the *Albino* burden-shifting inquiry," *Williams*, 775 F.3d at 1192, because as discussed,

8  he fails to put forth evidence that the Repealed Regulations procedure was generally

9  available to Plaintiff.

10    Second, upon further review, the evidence clearly reveals as a matter of undisputed

11  fact that Plaintiff was subject to the Amended Regulations procedure.

12    In the October 5, 2020 rejection, CAL's Office of Grievances explicitly instructed

13  Plaintiff that "[i]f you are dissatisfied with this response, you may appeal the rejection

14  decision to CDCR's Office of Appeals."  Def. Exhibit D; Pl. Exhibit C at 16.  This

15  indicates that CAL and the CDCR was applying the Amended Regulations as of

16  October 2020 and specifically, subjecting Plaintiff to them.  To be sure, the Repealed

17  Regulations' second level of review called for an appeal within the institution and only at

18  the third level of review were inmates required to appeal externally to the CDCR.  That is

19  to say, if the Repealed Regulations actually applied to Plaintiff, as Defendant argues, his

20  rejection would have directed him to file a second level of review within CAL internally

21  by filling out the second page of the 602 and would not have included the statement: "Do

22  not resubmit this claim to the Office of Grievances at Calipatria State Prison."  Def.

23  Exhibit D; Pl. Exhibit C at 16.

24    Plaintiff followed CAL's instruction and submitted an appeal directly to the

25  CDCR's Office of Appeals on October 11, 2020.  Def. Exhibit E; Pl. Exhibit C at 17–18.

26    Further, the Office of Appeals' December 16, 2020 denial letter explicitly noted

27  that Title 15, section 3482(b) and 3487(a)(1)—the Amended Regulations—were the

28  "Controlling Authority."  Def. Exhibit F; Pl. Exhibit C at 19.  Supremely important, the

decision reads:

> **Decision: Denied**
>
> After a thorough review of all documents and evidence available at the time of this written decision, it is the order of the Office of Appeals that this claim is denied.  ***This decision exhausts the administrative remedies available to the claimant within CDCR***.

*Id.* (emphasis added).[5]

Therefore, it is clear that—contrary to Defendant's argument—Plaintiff was subject to the Amended Regulations, which required only two levels of review.[6]

It is undisputed that Plaintiff completed two levels of review related to the April 30, 2020 incident prior to initiating this action.[7]  First, Plaintiff submitted a Form 602 grievance.  Def. Exhibit C; Pl. Exhibit A at 4.  Upon receiving a rejection from CAL's Office of Grievances, *see* Def. Exhibit D; Pl. Exhibit C at 16, he submitted an appeal to CDCR's Office of Appeals, *see* Def. Exhibit E; Pl. Exhibit C at 17–18.  The Office of Appeals denied his appeal on December 16, 2020.  Def. Exhibit F; Pl. Exhibit C at 19.

It is thus true that Plaintiff appealed "to the highest level" available to him.  Doc. No. 24 at 6 ¶ 13.  That said, there is an issue of whether Plaintiff *properly* exhausted his administrative remedies under the Amended Regulations.  *See Woodford*, 548 U.S. at 83–84 (holding that a prisoner does not satisfy 42 U.S.C. § 1997e(a)'s exhaustion

---

[5] As such, in making the argument that Plaintiff's claim should be dismissed for failure to exhaust under the Repealed Regulations, Defendant's counsel seemingly fails to review and interpret the evidence.

[6] The Court does not intend to judicially dictate how the CDCR and its peripheries should interpret the amendments and apply them.  However, because Plaintiff was subjected to the Amended Regulations, that is the procedure the Court applies.

[7] It is undisputed that the grievance and appeal complained of the same incident and conduct by Defendant that Plaintiff alleges in his SAC.  *Compare* SAC *with* Pl. Exhibits C, E.

requirement by filing an untimely or otherwise procedurally defective grievance or appeal).

Under the Amended Regulations, his July 5, 2020 grievance was untimely,[8] and his untimeliness was the sole basis for the initial rejection of his 602, *see* Def. Exhibit D, and ultimate denial of his appeal, *see* Def. Exhibit F. Plaintiff nonetheless argues that administrative remedies were unavailable to him. Doc. No. 24 at 6 ¶ 15.

"[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. If Defendant meets this initial burden, the burden then shifts to Plaintiff "who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191; *Albino*, 747 F.3d at 1172. He may do so by "showing the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Albino*, 747 F.3d at 1172 (citation omitted); *see also Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008) (noting potential "unavailability" of administrative remedies if officials "obstruct[ed] [the prisoner's] attempt to exhaust," or "prevented [him] from exhausting because procedures for processing grievances weren't followed"); *Nunez*, 591 F.3d at 1224 (finding prisoner's lack of exhaustion "excused" where record showed he "took reasonable and appropriate steps to exhaust . . . [but] was precluded from exhausting, not through his own fault but by the Warden's mistake").

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need

---

[8] As discussed *supra* note 4, the regulations were further revised, and the December 2021 revisions in particular changed the deadline for submitting a grievance and appeal. Under the version effective January 5, 2022, inmates now face a 60-day deadline. However, under the Amended Regulations, in effect from June 1, 2020 through January 5, 2022, the deadline was 30 days—the same as under the Repealed Regulations. Therefore, because the incident, grievance, and appeal all occurred while the operative deadline was 30 days, *see* Def. Exhibit F, the Court finds that Plaintiff was subject to a 30-day deadline to file his 602 and appeal.

not exhaust unavailable ones." *Ross*, 578 U.S. at 642; *Andres*, 854 F.3d at 1104. "To be available, a remedy must be available as a practical matter; it must be capable of use; at hand." *Williams*, 775 F.3d at 1191 (internal citations and quotation marks omitted).

Plaintiff asserts that he attempted to timely file his 602. He claims that he submitted a 602 on May 12, 2020, via institutional mail and addressed to CAL's Appeals Coordinator, but that it was neither filed nor processed. Doc. No. 24 at 2 ¶ 2. He further explains that he then sent a letter to the Appeals Coordinator's office on May 31, 2020, inquiring about the status and log number of his grievance, but received no response. *Id.* ¶ 3. Plaintiff asserts that, having received no response, he submitted a second 602 on June 9, 2020, via the locked box located in his unit, but again received no response. *Id.* ¶ 4. According to Plaintiff, it was his third 602 that was ultimately processed by CAL. He argues that, rather than submitting the 602 to CAL's Appeals Coordinator again, he attached it to a letter addressed to the Inmate Appeals Branch in Sacramento. *Id.* ¶ 9.

Defendant argues that Plaintiff's allegations are uncorroborated and self-serving and therefore do not defeat summary judgment. Doc. No. 25 at 3. The Court disagrees. Plaintiff submitted his opposition under penalty of perjury, Doc. No. 24-1 at 32, and he offers evidence in support of his assertions. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004), *cert. denied*, 546 U.S. 820 (2005). For example, in his July 5, 2020 letter to the Inmate Appeals Branch, he complained that he had previously submitted a 602 on May 12, 2020, an inquisition letter on May 31, 2020, and a second 602 on June 9, 2020, but received no response. Pl. Exhibit A at 2–3. He also narrated this same timeline in his appeal to the Office of Appeals. Pl. Exhibit C at 17.

Further, Plaintiff asserts that his July 5, 2020 602, which was attached to the letter addressed to the Inmate Appeals Branch in Sacramento, was "intentionally held . . . for 29 days." Doc. No. 24 at 4–5 ¶ 9. Plaintiff offers some evidence that appears to support this: CAL's "Outgoing Legal Log" recorded his letter on July 6, 2020, Doc. No. 24-1 at 10–13 ("Pl. Exhibit B") at 12, but the envelope was not postmarked in Sacramento until August 4, 2020, *id.* at 13. Even further, Defendant argues that the grievance was not

"reassigned" from Sacramento to CAL until "87 days later."  Doc. No. 24 at 5 ¶ 10.  The copy of the 602 submitted by Defendant bears a faded stamp appearing to represent that it was received *somewhere* in August.  Def. Exhibit C.  According to CAL's denial letter, CAL received it on August 7, 2020.  Pl. Exhibit C at 16.  However, the copy of the 602 offered by Defendant is clearly stamped "REC BY OOA AUG 7 2020."  Pl. Exhibit A at 4.  And Defendant's 602 is stamped "Received CAL Appeals SEP 29 2020."  Def. Exhibit C.  Moreover, Plaintiff received a letter from the CDCR reassigning the 602 to CAL on September 30, 2020.  Pl. Exhibit C at 15.  This would explain why Plaintiff did not receive a response from CAL until October 5, 2020.  Pl. Exhibit C at 16.

In further support, Plaintiff explains that, because his previous efforts to timely submit a grievance to CAL were ignored, doing so a third time would be futile and so instead he submitted his July 5, 2020 602 directly to the Inmate Appeals Branch rather than to CAL.  Doc. No. 24-1 at 3 ¶ 7 ("So on July 05, 2020, [Plaintiff] bypassed the first and second level and filed his grievance straight to the third level because Calipatria State Prison would not process the Plaintiff's grievance.").  Defendant characterizes the events differently.  Defendant asserts that Plaintiff "also submitted a letter directly to CDCR."  DSS No. 9.  However, there is no evidence to support Defendant's assertion that Plaintiff submitted his July 5, 2020 602 directly to CAL and "also" sent a letter to the Inmate Appeals Branch.  Instead, it is clear that Plaintiff's 602 was attached to a letter addressed to the Inmate Appeals Branch.

In sum, viewing the evidence in the light most favorable to Plaintiff, he attempted to file a 602 with CAL twice—once timely—before finally mailing a letter to the Inmate Appeals Branch on July 5, 2020, with the 602 attached thereto, complaining of CAL's failure to file his timely 602, which led to CAL ultimately receiving and processing the 602 in September 2020.  Therefore, Plaintiff has satisfied his burden of production under *Albino* and *Williams* insofar as his evidence shows that administrative remedies were not "available" to him because CAL staff failed to file his timely 602, delayed the submission of his July 5, 2020 602, and ultimately rejected his grievance as untimely.  *See Albino*,

747 F.3d at 1171; *Williams*, 775 F.3d at 1192 ("[P]ermitting a defendant to show that remedies existed in a general sense where a plaintiff has specifically alleged that official action prevented [him] from filing a particular grievance would force a plaintiff to bear the burden of proof, a burden which the plaintiff does not bear.") (quoting *Albino*, 747 F.3d at 1172).  Accordingly, because Defendant has not carried his ultimate burden of proof in light of Plaintiff's factual allegations, he is not entitled to summary judgment on this basis as well.

**C.   *Albino* Hearing**

Defendant in his reply alternatively asks the Court to hold an *Albino* hearing "[t]o the extent Plaintiff wishes to request a hearing on the merits."  Doc. No. 25 at 4.  Plaintiff does not request a hearing.  *See generally* Doc. No. 24.  So to the extent Defendant himself seeks a hearing on this issue, the Court denies the request at this time.  Instead, the Court **ORDERS** counsel for the parties to jointly contact the chambers of the assigned magistrate judge within ten (10) business days of the appointment of pro bono counsel for the purpose of scheduling a settlement conference.  Should settlement efforts fail, the Court will *sua sponte* reconsider whether to set the matter for an *Albino* hearing or issue a pretrial scheduling order.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion for summary judgment.  As Plaintiff's claim must proceed to trial, the Court will *sua sponte* reconsider Plaintiff's prior motion for appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1), *see* Doc. No. 16, now that the case has survived summary judgment and will refer the case to its Pro Bono Panel for *potential* pro bono representation pursuant to General Order 596, "Plan for the Representation of Pro Se Litigants in Civil Cases," which provides that the Court may appoint trial counsel as a matter of course in a prisoner civil rights case where summary judgment has been denied.

The Court further **ORDERS** that, within ten (10) business days of the appointment of pro bono counsel, counsel for the parties must jointly contact the chambers of the

assigned magistrate judge for the purpose of scheduling a settlement conference at the convenience of the magistrate judge.

**IT IS SO ORDERED**.

Dated:  April 4, 2022

HON. MICHAEL M. ANELLO
United States District Judge